# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
      **Plaintiff,**

    v.                                           **Case No. 06-CR-252**

**PATRICIA JOHNSON**
      **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Patricia Johnson with mail fraud and making false statements to the Social Security Administration ("SSA") arising out of a "double check negotiation" ("DCN") scheme. In such schemes, a social security recipient falsely reports not receiving her monthly benefit check, causing the SSA to issue another, then cashes both checks. In the instant case, defendant double cashed twenty-seven checks, causing a total loss of over $10,000.

Defendant pleaded guilty to one count of mail fraud, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 9 and her criminal history category at III, producing an imprisonment range of 8-14 months under the advisory sentencing guidelines.

Neither side objected to the PSR, but defendant requested a non-guideline sentence of probation, while the government advocated a prison sentence within the range. In this memorandum I explain my reasons for imposing a prison sentence slightly below the guideline range.

## I. SENTENCING FACTORS

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

## II.  DISCUSSION

**A.     Nature of Offense**

Defendant received supplemental security income ("SSI") for many years, both for herself and for a time as representative payee for her two daughters. Between 1985 and 2003, she falsely reported not receiving checks twenty-four times on her own claim and three times on behalf of her daughters, wrongfully obtaining $11,555.01.

Although I did not doubt that defendant acted out of need rather than greed, this was nevertheless a serious crime as defendant took advantage of a program designed to help the unfortunate and caused a loss to the treasury. The government has charged many such cases lately, and defendant is yet another who took advantage of the SSA's lenient – some might say lax – policy on reissuing checks. She engaged in DCN fraud numerous times over the course of years.

**B.     Character of Defendant**

Defendant was forty-seven years old and had a fairly significant record. She had been convicted of fraudulent or deceitful conduct several times. In 1980, she was convicted of failing to report income while receiving welfare-type benefits. In 1984, she was convicted of forgery. In 1988, she was convicted of obstructing an officer after giving a false name. In 1995, she was convicted of possession of drug paraphernalia and obstructing. In 2002, she was convicted of submitting false tax documents. In that case, she falsely claimed homestead tax credits, wrongfully receiving over $6000. This record demonstrated a pattern of taking advantage of welfare and benefit programs, and of deceit.

The defendant dropped out of high school and had not completed her GED. She had

3

some history of employment – three jobs were mentioned in the PSR – but she had for the most part relied on SSI for the past twenty-eight years.

Defendant had two adult children: one made positive statements to the PSR writer, while the other was critical. Defendant married in 2005, and her husband spoke well of her, indicating that she helped him with his own health problems.

There was a suggestion of untreated depression in defendant's history, in addition to the learning disability that initially made her eligible for SSI. She denied any substance abuse but failed a drug test while on state supervision in 2003, and she had the drug paraphernalia conviction.

## C.     Consideration of Guidelines

The guidelines called for a term of 8-14 months. That range falls within Zone C and allows a split sentence of ½ prison and ½ community confinement. I generally found such a sentence appropriate under the circumstances.

Defendant asked for a non-guideline sentence of probation, but such a sentence was insufficient to protect the public and deter defendant from re-offending. This was her third criminal conviction involving fraud on the government, and her sixth conviction involving deceit. Probationary sentences and fines, which she had typically received in prior cases, had not stopped her from continuing to offend.

I acknowledged, as defendant pointed out, that this was not a crime of violence, and that defendant likely acted out of need. No one is going to live lavishly double cashing $275 checks. Were it not for her record, I would likely have concluded that a non-prison sentence provided sufficient punishment, but under these circumstances I could not so find.

Defendant also pointed to her age and employment history as mitigating factors.

4

Generally, people in their forties and fifties tend to slow down as far as committing crimes is concerned. But that was not the case here. Defendant submitted false tax documents in her thirties and committed this offense in her forties. I also acknowledged defendant's mental limitations and health problems, but the former did not prevent her from committing numerous crimes, and the latter did not seem all that serious. Finally, defendant noted that she had paid most of the restitution back, but that appeared to be the result of the SSA docking her checks, not any decision she made.

Thus, I found none of these grounds for a non-guideline sentence of probation persuasive. I did impose a sentence a bit below the range to recognize the fact that defendant was motivated by financial hardship, not greed. The offense, while serious, caused a loss barely sufficient to trigger the 4 level loss enhancement under U.S.C. § 2B1.1(b)(1). I also noted that the base level of 7 could have been 6 under U.S.S.G. § 2B1.1(a) had defendant been convicted under a different statute, such as making false statements to social security. See United States v. Carey, 368 F. Supp. 2d 891, 895 (E.D. Wis. 2005). These factors merited some consideration, but for the reasons stated above, a prison sentence was necessary to satisfy the purposes of sentencing.

### III. CONCLUSION

Under all of the circumstances, I imposed a total period of confinement of 6 months, split between prison and home confinement. This sentence provided for a longer term of confinement than on any previous sentence – she served 60 days in the house of correction on the tax fraud case – and was sufficient but not greater than necessary to satisfy all of the purposes of sentencing.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 3 months,

5

followed by three years of supervised release with a condition that she serve 3 months of home confinement. I further ordered her to make full restitution to the SSA. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge